**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| American Family Mutual Insurance Company,<br><br>Plaintiff,<br><br>vs.<br><br>Spectre West Builders Corporation; Mountain Vista Villas Homeowners Association, Inc.,<br><br>Defendants. | No. CV09-968-PHX-JAT<br><br>**ORDER** |

Pending before the Court are Plaintiff American Family Mutual Insurance Company's Motion for Summary Judgment (Doc. 37), Defendant Mountain Vista Villas Homeowners Association's Cross Motion for Summary Judgment (Doc. 38), and Plaintiff's Motion to Strike Defendant's Affidavits (Doc. 65). The Court now rules on the Motions.

**I. BACKGROUND**

Defendant Spectre West Builders Corporation ("Spectre")[1] constructed the Mountain Vista Villas (the "MVVs"), a 73-unit condominium complex in Pinal County, Arizona. Plaintiff American Family Mutual Insurance Company ("American Family") insured Spectre under commercial general liability policies at various times between July 3, 1999 and September 9, 2008. Defendant Mountain Vista Villas Homeowners Association, Inc. (the

---

[1] The Court has entered default against Spectre for failure to appear in this action.

"Association") is an Arizona non-profit corporation formed in 2003 that is responsible for the common elements of real property at the MVVs.

Spectre undertook construction of the MVVs between 2004 and 2006. Spectre turned the condos over to the Association on May 1, 2006. The Association alleged that Spectre committed various defects in construction of the MVVs. Pursuant to the terms of the Amended and Restated Condominium Declarations for the MVVs, the Association instituted an arbitration against Spectre in May 2008 to resolve the construction defect issues.

American Family defended Spectre in the arbitration under a reservation of rights. At the arbitration, the Association submitted expert witness reports to prove improper construction and resultant damages, including water damage, as well as the cost to repair or remedy the defective construction and the water damage. No transcript from the arbitration hearing exists, but the parties stipulated certain evidence into the record. In a stipulation dated April 8, 2009, Spectre and the Association stipulated to the authenticity, foundation, and admissibility of the following documents:

> 1. CC&R's of Mountain Vista Villas and amendments.
>
> 2. All job files, photographs and expert reports for plaintiff's and defendant's experts.
>
> 3. All correspondence between counsel, between counsel and the developer and between the developer and the Association.
>
> 4. All plans and specifications.
>
> 5. All documents disclosed by either party
>
> 6. All disclosure statements and pleadings.
>
> 7. All deposition transcripts of any witness taken in this matter by either plaintiff or defendant.

(Doc. 39 Ex.M.)

The Arbitrator, Larry Fleischman, Esq., issued an Arbitration Under Advisement Ruling on May 21, 2009, in which he found the following costs of repair for the various claims:

> 1. Roofs - $50,000

    2. Decks - $75,000

    3. Sliders - $25,000

    4. Exterior Stairs and landings - $16,295.53

    5. One coat plaster - $4,071.44

    6. Exterior doors - $25,000

    7. Fire resistive construction (extrapolation re claim defect found) - $1,442,287.99

    8. Wallboard - $1,055.20

    9. Miscellaneous architectural - $15,000

    10. Windows (partial extrapolation found re lack of flashing) - $100,000

    11. Structural - $50,000

    12. Plumbing (failure of proof as to number of defective Sterling tubs, as well as code violation) - $5,000

    13. HVAC (extrapolation not established) - $10,000

    14. Reserve claim - $20,000

    15. Fees and costs - Plaintiff shall provide a fee and cost breakdown and defendant has ten (10) days to respond, at which time the matter will be taken under advisement.

(Doc. 39 Ex.K.) The Arbitrator did not indicate which portion of the repair costs was allocated to repair the defective construction and which portion was allocated to repair property damage, such as water damage, caused by the defective construction.

    The Arbitrator issue his final award on June 30, 2009. (Doc. 39 Ex.J.) The Arbitrator awarded $1,838,710.16 in damages to the Association against Spectre. (Id.) The Arbitrator further found that the Association was entitled to "its taxable costs, expert fees and attorney's fees (pursuant to Section 11.5(k) of the Declaration, A.R.S. §12-1364, A.R.S. §12-341.01 and A.R.S. §12-322)." (Id.) He therefore awarded the Association $300,000 in attorneys' fees and $259,475.65 in costs. (Id.)

    The Association requested confirmation of the arbitration award pursuant to A.R.S. §12-1511. Judge Figueroa of the Pinal County Superior Court confirmed the award and

- 3 -

1 entered judgment for the Association against Spectre in the amount of $2,398,185.81 on
2 August 5, 2009. (Doc. 39 Ex.L.)

3 American Family instituted this declaratory judgment action to determine insurance
4 coverage for the Association's underlying construction defect claims against Spectre. In its
5 Complaint, American Family asks the Court to declare that no coverage exists for the
6 Association's claims against Spectre because: there was no "occurrence" as defined by the
7 policy during the policy period; no "property damage" occurred as defined by the policy; the
8 alleged damages fall within the exclusion for damage to property; the alleged damages fall
9 within the exclusion for damage to work; and the alleged damages fall within the exclusion
10 for damage to impaired property or property not physically injured. (Doc. 1, p.9.) American
11 Family further asks the Court to declare the Policy does not provide coverage for the
12 Association's attorneys' fees and non-taxable expenses. (Id.)

13 American Family filed its Motion for Summary Judgment on June 30, 2010. (Doc.
14 37.) It argues that the Court should find as a matter of law that Spectre's insurance policies
15 do not provide coverage for the arbitration award obtained by the Association because the
16 Association cannot prove an "Occurrence" or "Property Damage" under the policies and
17 cannot prove that resulting damage occurred during any of the policy periods. American
18 Family also wants the Court to declare as a matter of law that the policies do not cover the
19 Arbitrator's award of attorneys' fees and non-taxable costs.

20 The Association filed its own Motion for Summary Judgment. (Doc. 38.) The
21 Association asks the Court to hold as a matter of law that American Family is legally
22 obligated to indemnify Spectre for the Pinal County Superior Court's judgment of
23 $2,398,000. The Association argues that no issue of material fact exists regarding property
24 damage occurring at the MVVs that arose out of an occurrence during the policy periods.

25 American Family filed a Motion to Strike (Doc. 65) the affidavits attached to the
26 Association's Reply in Support of Summary Judgment (Doc. 59). American Family argues
27 that the affidavits contain opinions that were not timely or properly disclosed and set forth
28 facts and opinions raised for the first time in a reply pleading.

- 4 -

**II. MOTION TO STRIKE**

American Family moves to strike the affidavits of Ron Risto, dated August 2, 2010, and Carl Josephson, dated August 4, 2010, that it claims were filed with the Association's Reply in Support of its Motion for Summary Judgment (Doc. 59). The Reply references the affidavits of Josephson and Ron Risto, but the only affidavit that the Association actually attached to its Reply is an affidavit of Mr. Risto (Doc. 59-2 Ex.A).

On the same day it filed the Reply, August 16, 2010, the Association also filed something that it denominated "Notarized Affidavits in Support of Defendant's Response to Plaintiff's Motion for Summary Judgment" (Doc. 60), which may have confused American Family. The Association originally attached un-notarized affidavits of Carl Josephson, Ron Risto, and Larry Fleischman to its Response in Opposition to Plaintiff's Motion for Summary Judgment. The second filing on August 16, 2010 (Doc. 60) only provided notarized copies of those three affidavits.

Pursuant to 28 U.S.C. §1746, parties do not have to submit notarized affidavits in support of or opposition to motions for summary judgment if they submit unsworn declarations that substantially comply with the following form: "I declare under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." 28 U.S.C. §1746(2). The original affidavits of Josephson, Risto, and Fleischman were dated and signed, but did not contain the statement "I declare under penalty of perjury that the foregoing is true and correct." The Court need not determine whether the original affidavits substantially complied with the statute because Plaintiff did not object to their form and the Association has since cured the mistake. The Court will not strike the affidavits for that particular reason.

The Court, however, will strike the affidavit of Ron Risto that was actually attached to the Reply. Local Rule of Civil Procedure 7.2(m)(1) provides that a party may file a motion to strike only if it is authorized by stature or rule *or if the party seeks to strike any part of a filing on the ground that it is not authorized by statute, rule, or court order*. (emphasis added). The undersigned has held that local procedural rules do not allow parties

1 to attach additional exhibits to replies in support of summary judgment, which is "consistent
2 with the moving party's need to show no genuine issue of material facts exists and that there
3 is no need for a trier of fact to weigh conflicting evidence, assuming the non-moving party's
4 evidence is true." *Kinally v. Rogers Corp.*, No. CV06-2704, 2008 WL 572870 *2 (D.Ariz.
5 Dec. 12, 2008)(citing *EEOC v. TIN Inc.*, 2008 WL 2323913 at *1 (D.Ariz. June 2, 2008)).
6 Because the Ron Risto affidavit attached to the Association's Reply is not allowed by rule,
7 the Court will grant American Family's Motion to Strike it.

8 The Court also will grant the Motion to Strike Mr. Josephson's affidavit, even though
9 the affidavit is attached to the Association's Response, rather than its Reply. The
10 Association never disclosed Mr. Josephson as an expert witness and its deadline for
11 disclosing expert witnesses passed long ago.

12 Federal Rule of Civil Procedure 37 (c)(1) automatically excludes any evidence that
13 is not properly disclosed, unless the failure to disclose is substantially justified or harmless.
14 *Yeti by Molly Ltd. v. Granville*, 259 F.3d 1101, 1106 (9th Cir. 2001). The party attempting
15 to introduce the evidence has the burden of proving justification or harmlessness. *Id.* at
16 1107. The Court finds that the Association has not demonstrated substantial justification or
17 harmlessness for failing to disclose Mr. Josephson. The Court therefore will strike both the
18 un-notarized and notarized affidavits of Mr. Josephson.

19 American Family has not moved to strike the affidavit of Ron Risto attached to the
20 Association's Response. The Court notes that it will consider Mr. Risto's report from the
21 underlying arbitration. The Court cautions, however, that it will not consider any additional
22 expert opinions by Mr. Risto that were not properly disclosed in this case.

23 **III. CROSS MOTIONS FOR SUMMARY JUDGMENT**
24 **A. LEGAL STANDARD**

25 Summary judgment is appropriate when "the movant shows that there is no genuine
26 dispute as to any material fact and the movant is entitled to judgment as a matter of law."
27 Fed. R. Civ. P. 56(a). Thus, summary judgment is mandated, "...against a party who fails to
28 make a showing sufficient to establish the existence of an element essential to that party's

- 6 -

1  case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*,
2  477 U.S. 317, 322 (1986).

3  Initially, the movant bears the burden of pointing out to the Court the basis for the
4  motion and the elements of the causes of action upon which the non-movant will be unable
5  to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-
6  movant to establish the existence of material fact. *Id.* The non-movant "must do more than
7  simply show that there is some metaphysical doubt as to the material facts" by "com[ing]
8  forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec.
9  Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P.
10 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury
11 could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
12 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create
13 a material issue of fact and defeat a motion for summary judgment. *Id.* at 247-48. However,
14 in the summary judgment context, the Court construes all disputed facts in the light most
15 favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir.
16 2004).

17 **B. COVERAGE FOR REPAIRS**

18 The interpretation of an insurance contract is a question of law. *Wilshire Ins. Co. v.
19 S.A.*, 227 P.3d 504, 506 (Ariz. Ct. App. 2010). In Arizona, courts interpret insurance policies
20 according to their plain and ordinary meaning, from the viewpoint of an individual untrained
21 in law or business. *Desert Mountain Props. Ltd. P'ship v. Liberty Mut. Fire Ins. Co.*, 236
22 P.3d 421, 427 (Ariz. Ct. App. 2010). If a policy appears ambiguous, courts consider
23 legislative goals, social policy, and the transaction as a whole. *Id.* A policy "is ambiguous
24 if it is subject to conflicting reasonable interpretations." *Id.* (omitting internal citations).

25 Generally, the insured has the burden of establishing coverage under an insuring
26 clause. *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 13 P.3d 785, 788 (Ariz. Ct. App. 2000).
27 The insurer has the burden of proving the applicability of any exclusion. *Id.*

28 The Spectre insurance policies at issue provide coverage for "property damage" that

- 7 -

1  is caused by an "occurrence."  The Coverages section of the policies reads:

2          SECTION 1 - COVERAGES

3          COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

4          1. Insuring Agreement

        a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our own discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

        . . .

        b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        (2) The "bodily injury" or "property damage" occurs during the policy period.

(Doc. 50 Ex 7.) The policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Id.)  They define "property damage" in pertinent part as "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." (Id.)

      Arizona courts have addressed whether this type of general commercial liability policy covers construction defects.  In *United States Fidelity & Guaranty Corporation v. Advance Roofing and Supply Co.*, the insurer sought a declaration that it had no duty under a comprehensive general liability policy to defend an action against its insured. 788 P.2d 1227, 1228 (Ariz. Ct. App. 1990).  The policy at issue in *Advance Roofing* had substantially the same language as the policies here. *Id.*

      The insured in *Advance Roofing* was a roofing company that failed to replace roofs per its contract with a home owners' association. *Id.* The association sued the company for

- 8 -

1  breach of contract. *Id*. The roofing company tendered defense of the action to its insurer,
2  which filed the declaratory judgment action. *Id*. at 1229.

3  The Arizona Court of Appeals noted that the complaint against the roofing company
4  and others did not specifically allege any property damage, only faulty workmanship. *Id*. at
5  1233. The roofing company did not address whether the damages resulting from faulty
6  workmanship could be covered "property damages," but instead argued faulty workmanship
7  itself constitutes an "occurrence" under the policy. *Id*. The *Advanced Roofing* court held,
8  "[M]ere faulty workmanship, standing alone, cannot constitute an occurrence as defined in
9  the policy, nor would the cost of repairing the defect constitute property damages." *Id*.

10  Subsequent decisions have made clear, however, that physical damage caused by
11  faulty workmanship can constitute an occurrence under a commercial liability policy. *See,*
12  *e.g., Lennar Corp. v. Auto-Owners Ins. Co.*, 151 P.3d 538, 545-46 (Ariz. Ct. App.
13  2007)(holding insurer had to defend insured where underlying plaintiffs alleged damage
14  resulting at least in part from faulty workmanship, including cracks in the walls, baseboard
15  separation, and floor tile grout cracks and separation). "[A]lthough costs incurred to repair
16  a construction defect normally are not covered, damage to other property caused by or
17  resulting from the defect may be covered." *Desert Mountain*, 236 P.3d at 441. So, while
18  the policies do not cover the costs to repair the construction defects at the MVVs, they could
19  cover property damage resulting from the faulty construction.

20  The Association submitted expert reports at the arbitration that outlined the alleged
21  property damage. For example, under the heading "Sliding Glass Doors," the R.H. Adcock
22  Defect Report lists the defect as a sliding glass door system failure, which resulted in water
23  intrusion "causing damage to structural components, exterior and interior finishes." (Doc.
24  45 Ex.2, pp.37-38.) The Adcock Report also notes that the windows were not properly
25  weatherproofed. (Id., p.61.) As a result, there were drywall cracks, drywall stains, and
26  framing stains from water intrusion. In another category called "Wallboard," the Adcock
27  Report lists wallboard cracking and staining as damage and the only recommendations were
28  to repair interior stains "with Kilz primer" and to paint the entire ceiling. (Id., pp.52-53.)

- 9 -

The Court finds that these reports establish that property damage resulting from faulty workmanship occurred at the MVVs. Further, categories like "Wallboard" – where the only repair recommendations clearly indicate resultant property damage and the Arbitrator specifically awarded damages for that category – demonstrate that at least part of the Arbitrator's damages were awarded to repair resultant property damage and not just to fix faulty construction.

The Court also finds sufficient evidence that the damage occurred during the policy periods. The nature of an occurrence policy is to provide coverage for all occurrences during a policy period, including incremental damage. *Lennar*, 151 P.3d at 548-49. Insurers must provide coverage for ongoing property damage. *Id.* American Family insured Spectre at various times from July of 1999 to September of 2008 under commercial general liability policies. Construction of the MVVs took place between 2004 and 2006. Spectre turned the condos over to the Association in May of 2006, and the Association instituted the Arbitration in May of 2008, after finding numerous defects. The Court finds sufficient evidence that ongoing and incremental property damage occurred during the policy periods, specifically at least the policies in effect from February 8, 2006 to April 8, 2006 and August 15, 2007 to August 15, 2008.[2]

Based on the foregoing, the Court can award partial summary judgment to the Association and to American Family. The Court finds that the Spectre liability policies provide coverage for the portion of the arbitration damages meant for resultant damage repairs. On this record, however, the Court cannot determine how much of the award was intended for repair of resultant damage, like wall cracks, mold, and water staining.

The finder of fact must determine the precise amount of coverage for compensatory damages. The Court, of course, will not disturb the underlying arbitration award. The

---

[2]The August 15, 2007 to August 15, 2008 policy period encompasses the time period immediately preceding the arbitration. The detailed Adcock Defect and Repair Recommendation Report, which was based on prior visits to the MVVs was prepared in September of 2008.

- 10 -

1 Association cannot recover more than the total damages awarded by the Arbitrator and 2 cannot recover in any category of damages more than the Arbitrator set out for that category 3 in his May 21, 2009 Arbitration Under Advisement Ruling.

4 When reviewing the pending Motions, the Court did not consider the affidavit of the 5 Arbitrator, Mr. Fleischman. Nor will the Court allow Mr. Fleischman to testify to clarify or 6 elaborate on his Award. "When arbitrators have once made an award their office is at an end. 7 They cannot afterwards correct mistakes by a new award, or explain it by affidavit. Any 8 construction given to it must rest on what is apparently in the original award." *Alexander v.* 9 *McNear*, 28 F. 403, 406 (C.C.D.Cal. 1886). Parties cannot call on arbitrators to explain 10 anything "vague and uncertain in their award." *Id.*; *see generally* Reuben I. Friedman, 11 Annotation, *Admissibility of Affidavit or Testimony of Arbitrator to Impeach or Explain* 12 *Award*, 80 A.L.R.3d 155, §15 (1977).

13 **C. COVERAGE FOR ATTORNEYS' FEES AND COSTS**

14 Along with awarding repair damages, the Arbitrator awarded $300,000 in attorneys' 15 fees and $259,475.65 in costs to the Association pursuant to Section 11.5(k) of the 16 Declaration, A.R.S. §12-1364, A.R.S. §12-341.01, and A.R.S. §12-322. American Family 17 argues that the insuring clause does not cover attorneys' fees and non-taxable costs. 18 Alternatively, American Family argues that attorneys' fees and non-taxable costs are 19 excluded by the "Contractual Liability" section of the policies.

20 The insuring agreements provide that American Family will "pay those sums that the 21 insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property 22 damage' to which this insurance applies." (Doc. 50 Ex.7.) The policies define "bodily 23 injury" and "property damage," but not "damages." The issue before the Court is not 24 whether attorneys' fees and costs can be characterized as "property damage," but whether 25 they can be characterized as damages that Spectre became legally obligated to pay *because* 26 *of* property damages.

27 American Family asserts that *Columbia Casualty Co. v. United States Fidelity &* 28 *Guaranty Co.*, 870 P.2d 1200 (Ariz. Ct. App. 1994) stands for the proposition that attorneys'

- 11 -

fees cannot constitute damages under a liability policy. In *Columbia Casualty*, in the underlying litigation, the primary insurance carrier caused the insured to sue a third party, in an unsuccessful attempt to shift liability. *Id.* at 1201. The third party obtained summary judgment and an award of attorneys' fees against the insured. *Id.* The primary insurer treated payment of the attorneys' fee award as payment of insurable damages, which when added to earlier payments on the policy, exceeded the $100,000 primary limit and thereby triggered the excess coverage. *Id.*

The question before the Arizona Court of Appeals was whether the payment of the attorneys' fees award to the successful third-party defendant should be considered a liability payment under the policy. *Id.* The appeals court held:

> We do not see how such payments can be treated as something the insured was legally obligated to pay as damages because of property damage. Seeking unsuccessfully to shift liability to a third person for property damages does not make sums due that third person damages caused by the original property damages. The attorneys' fees are damages caused by the insurer's incorrect assessment of the liability of the third person it, in the exercise of its exclusive control of the insured's defense, chose to sue. The price of a failed defense undertaken in part to allow the insurer to escape its obligation to pay for the insured's liabilities cannot be that the insured will have lost its protection. Consequently, we believe it proper to treat the attorneys' fees award as "expenses incurred by the Company" or "costs taxed against the insured in any suit defended by the Company," both of which under the policy in issue the insurer is obligated to pay in addition to liability payments.

*Id.*

But the appeals court went on to distinguish the situation here. The primary insurer in *Columbia Casualty* relied on an Eastern District of Michigan case for the proposition that an attorneys' fee award is covered by a general liability policy. In response to that argument, the appeals court stated, "That award was to the plaintiff suing the insured and thus was a liability arising from the insured event." *Id.* The Arbitrator's award of attorneys' fees and costs was to a plaintiff, the Association, suing the insured, Spectre, which the *Columbia Casualty* court described as a "liability arising from the insured event." *Id.* Thus, if anything, *Columbia Casualty* supports coverage for the Association's attorneys' fees and costs.

- 12 -

The Court finds that the insuring language is broad enough to encompass coverage for the Arbitrator's award of attorneys' fees and costs to the Association. The Court already has held that property damage occurred under the policies, and Spectre became legally obligated to pay attorneys' fees and costs as a result of that property damage. The Court therefore finds that the attorneys' fees and costs awarded at the arbitration are damages that fall under the insuring clause of the policies. *Cf. Desert Mountain*, 236 P.3d at 436 ("[S]uch costs and expenses, including attorneys' fees, should be treated as the legal consequences of the original wrongful act and may be recovered as damages.")(internal citations omitted).

The Court now must determine whether coverage for the attorneys' fees and non-taxable costs[3] is defeated by an exclusion. American Family argues that the following provision in the policies excludes coverage for attorneys' fees and costs because the Association's right to attorneys' fees arose out of contract:

> **2. Exclusions**
> This insurance does not apply to:
>
> . . .
>
> **b. Contractual Liability**
>
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of the liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
>   (1) That the insured would have in the absence of the contract or agreement; or
>
>   (2) Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:
>
>     (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

---

[3]American Family concedes that it must cover all of the Association's taxable costs.

- 13 -

>> (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

(Doc. 50 Ex.7.)

The Court finds that the plain language of the exclusion negates Defendant's argument. The exclusion provides that the Policy will not apply to "bodily injury" or "property damage" for which the insured has to pay damages because of the assumption of liability in a contract or agreement. The Court has held that attorneys' fees and non-taxable costs qualify as damages an insured becomes legally obligated to pay *because of* "bodily injury" or "property damages." But the Court does not find that attorneys' fees and non-taxable costs qualify as "property damage," as defined by the Policy, which is required for the exclusion to apply. Alternatively, even if attorneys' fees constitute "property damage" under the Policy, the fees were not imposed on Spectre by reason of its "assumption of the liability in a contract or agreement." Rather, the fees were imposed by operation of statute.

Moreover, the Arizona Court of Appeals, recently confirmed that exclusions like the one above do not encompass all contracts, regardless of their nature. *Desert Mountain*, 236 P.3d at 432 (internal citations omitted). Rather, the contractual liability exclusions apply only to "the assumption of another's liability, such as an agreement to indemnify or hold another harmless." *Id*. The contractual liability exclusion therefore does not bar coverage of the Association's attorneys' fees and costs. Because the insuring clause covers the award of attorneys' fees and costs and because no exclusion applies, the Court holds as a matter of law that the policies cover the Arbitrator's award of $300,000 in attorneys' fees and $259,475.65 in costs.

Accordingly,

**IT IS ORDERED** GRANTING Plaintiff American Family's Motion to Strike (Doc. 65). The Clerk shall strike the affidavit of Ron Risto attached to the Defendant's Reply in Support of its Motion for Summary Judgment (Doc. 59). The Clerk also shall strike the un-notarized affidavit of Carl Josephson that was attached to the Defendant's Response in

Opposition to Motion for Summary Judgment (Doc. 58) as well as the notarized version of Mr. Josephson's affidavit that the Association filed separately at Docket 60.

**IT IS FURTHER ORDERED** GRANTING IN PART AND DENYING IN PART American Family's Motion for Summary Judgment (Doc. 37). The Motion is granted to the extent that the Court finds that the Spectre liability policies do not provide coverage for whatever portion of the arbitration award covers the repair of construction defects at the MVVs. The Motion is denied to the extent that the Court finds that the Spectre policies do provide coverage for whatever portion of the Arbitration Award covers the repair of property damage caused by the construction defects; such amount to be determined by the fact finder. The Motion is further denied to the extent that the Court finds the policies cover the Association's attorneys' fees and costs.

**IT IS FURTHER ORDERED** GRANTING IN PART AND DENYING IN PART Defendant Association's Motion for Summary Judgment (Doc. 38). The Motion is denied to the extent that the Court finds that the policies do not provide coverage for the total amount of repair damages awarded to the Association in the Arbitration because the policies do not cover the costs to repair construction defects. The Motion is granted to the extent that the Court finds that the policies do provide coverage for whatever portion of the Arbitration Award covers the property damage caused by the construction defects, with such amount to be determined later by the fact finder. The Motion is further granted to the extent that the Court finds as a matter of law that the policies provide coverage for the Arbitrator's award of $300,000 in attorneys' fees and $259,475.65 in costs.

DATED this 4th day of February, 2011.

James A. Teilborg
United States District Judge